# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| NOBLE ROMAN'S INC., | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 15 CV 9446 |
| | ) | |
| v. | ) | Judge Robert M. Dow, Jr. |
| | ) | |
| B & MP, LLC, BRADLEY PERDRIAU, and LESLIE PERDRIAU, | ) ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Noble Roman's Inc. ("Plaintiff") brings suit against Defendant B & MP, LLC ("B & MP") for breach of contract, violation of the Lanham Act, 15 U.S.C. § 1125(a), and deception, Indiana Code § 35-43-5-3. Plaintiff also brings suit against B & MP and Leslie Perdriau ("Leslie") (together, "Defendants") and Leslie's son Bradley Perdriau ("Bradley") for injunctive relief. Plaintiff and Bradley settled their dispute and stipulated to the dismissal of Bradley with prejudice. See [211]. Currently before the Court are Plaintiff's motion for partial summary judgment [184] and Defendants' motion for summary judgment [193] and motion to reopen discovery for the limited purpose of discovering a settlement agreement and negotiations between Plaintiff and Bradley [213]. For the reasons explained below, the Court denies Plaintiff's motion for partial summary judgment [184], denies Defendants' motion for summary judgment [193], and grants Defendants' motion to reopen discovery for the limited purpose outlined in the analysis below [213]. Plaintiff shall have until May 5, 2017 to either (1) file a motion for leave to file an amended complaint substituting or adding Army Trail Shell Deli, Inc. ("Army Trail") as the corporate defendant; or (2) file a brief, with proper citation to supporting authority, explaining why Army Trail is not a necessary party to this lawsuit. The Court will

then set a status hearing, order supplemental briefing, and/or supplement or reconsider its summary judgment rulings if necessary. In addition, the parties should proceed with the supplemental discovery outlined below and are directed to file a joint status report on May 5, 2017 advising the Court of their progress and suggesting a cutoff date for completing the supplemental discovery.

**I.  Background**

The following facts are drawn primarily from the parties' statements of undisputed material facts and responses thereto, along with supporting exhibits, and are undisputed unless otherwise noted. See [101] at 2-8; [193-1]; [197-1]; [198] at 2-3, [203-1].[1]

Plaintiff was established in 1972 and has been in the pizza business continuously since that time. Plaintiff is a party to franchise agreements for the operation of Noble Roman's pizza and Tuscano's Italian-style sub sandwich franchises with various franchisees throughout the United States. Plaintiff owns the "Noble Roman's" and "Tuscano's" registered trademarks.

---

[1] "The Northern District has promulgated Local Rules 56.1(a) and 56.1(b) to delineate the parties' obligations in summary judgment proceedings, and the court has broad discretion to enforce these rules." *Kiswani v. Phoenix Sec. Agency, Inc.*, 529 F. Supp. 2d 949, 951 (N.D. Ill. 2008). Local Rule 56.1(a) requires the party moving for summary judgment to file "a statement of material facts as to which the moving party contends there is no genuine issue and that entitle the moving party to a judgment as a matter of law." N.D. Ill. R. 56.1(a)(3). The separate statement must "consist of short numbered paragraphs" that refer to "materials relied upon to support the facts set forth." N.D. Ill. R. 56.1(a). Local Rule 56.1(b) requires the party opposing summary judgment to file "a response to each numbered paragraph in the moving party's statement, including, in the case of any disagreement, specific references to the affidavits, parts of the record, and other supporting materials relied upon." N.D. Ill. R. 56.1(b)(3)(B). Plaintiff's fact statements fail to comply with Local Rule 56.1. Most notably, Plaintiff includes its material facts and responses in its briefs, rather than in separate documents, and its responses do not specifically admit or deny each fact set forth in Defendants' statement. Nonetheless, in the interest of resolving this matter and in recognition of the fact that this lawsuit originated in the Southern District of Indiana (where this district's local rules do not apply), the Court will exercise its discretion in the direction of leniency and consider all of the parties' assertions of fact and responses to the extent that they are supported by the evidence the parties have submitted. *Modrowski v. Pigatto*, 712 F.3d 1166, 1169 (7th Cir. 2013) (making clear that, although district courts have discretion to require strict compliance with Rule 56.1, "[i]t does not follow * * * that district courts cannot exercise their discretion in a more lenient direction: litigants have no right to demand strict enforcement of local rules by district judges").

B & MP was an Illinois limited liability company that owned and operated a convenience store and gas station on Army Trail Road in Bloomingdale, Illinois (the "Station"). B & MP was incorporated with the Illinois Secretary of State on October 5, 2001. [197-5] at 244. Leslie Perdriau was the sole owner and manager of B & MP. According to his declaration, Leslie retired in 2002 and his son, Bradley, became "responsible [for] all aspects of station operation." [200] at 2, ¶ 8. Leslie also states in another declaration that Bradley was "authorized to hire employees, fire employees, arrange for bank deposits, maintain books, records and otherwise perform all that was needed to be performed in order to operate the station." [197-5] at 155.

In 2009, Plaintiff and Bradley began discussions about B & MP operating a Noble Roman's franchise at the Station. On December 2, 2009, Bradley signed a receipt acknowledging that he had received a "Franchise Disclosure Document dated July 6, 2009," which included franchise agreements for Noble Roman's Pizza and Tuscano's Italian Style Subs, and various other documents. [198-1] at 1.

On March 16, 2010, Plaintiff and B & MP executed standard Noble Roman's franchise agreements for the operation of a Noble Roman's pizza franchise and a Tuscano's sub sandwich franchise at the Station (the "Franchise Agreements"). See [68-1], [68-2]. Bradley signed the Franchise Agreements on behalf of B & MP. [68-1] at 31, 33; [68-2] at 31, 33. Both Franchise Agreements state that, "[w]ith respect to all claims, controversies, disputes or actions, this agreement shall be interpreted and construed under Indiana law." [68-1] at 28, § XIX(F); [68-2] at 28, § XIX(F).

In the Franchise Agreements, B & MP acknowledged that it "understands and agrees to the importance of maintaining uniformity among all of the units of Noble Roman's Pizza and the importance of complying with all of [Noble Roman's] standards and specifications relation to the

3

operation of the Noble Roman's Pizza." [68-1] at 9; [68-2] at 9. The Franchise Agreements required B & MP to "operate Noble Roman's Pizza in strict conformity with such methods, standards and specifications of [Noble Roman's]," including "us[ing] and sell[ing] at all times only such … ingredients … that conform to [Noble Roman's] standards and specifications." [68-1] at 9-10; [68-2] at 9-10. They also required B & MP "to comply with all of [Noble Roman's] standards and specifications relating to the purchase of … ingredients … used or offered for sale at Noble Roman's Pizza," and provided that failure to comply with this provision "shall be deemed a material event of default" under the agreements. [68-1] at 9; [68-2] at 9. Further, the Franchise Agreements provided that B & MP "shall use only [Noble Roman's] designated products." [68-1] at 11; [68-2] at 11.

Plaintiff provides a Food Preparation and Production Specifications Manual to its franchisees ("the Manual"). The Manual specifies the type of cheese that franchisees are required to use, including Noble Roman's Pizza Cheese, "a custom blend and cut of real Mozzarella and real Muenster cheese with dry oregano added." [197-1] at 6. The Manual also provides that "[a]ll items used [by franchisees] must be Noble Roman's Inc. approved" and "[a]ll other toppings are proprietary ingredients and may not be substituted." *Id.* at 6-7.

The Franchise Agreements required B & MP to pay Plaintiff a franchise fee. Specifically, Section IV provided that B & MP would pay "a continuing weekly royalty fee ('Royalty Fee') in the amount of seven percent (7%) of the Gross Sales of the [Noble Roman's or Tuscano's products]." [68-1] at 4; [68-2] at 4. "Gross Sales" was defined as "the total selling price of all products and services and all income from every other kind and nature related to [the Noble Roman's or Tuscano's franchises], whether for cash or credit and regardless of collection in the case of credit, but expressly excluding sums representing sales taxes collected directly

from customer," plus "all proceeds from the sale of coupons, gift certificates, or vouchers." [68-1] at 5; [68-2] at 5.

Under the Franchise Agreements, B & MP was required to maintain and preserve for at least five years "full, complete, accurate books, records and accounts, including, but not limited to, daily sales records, sales slips, coupons, purchase orders, payroll records, check stubs, bank statements, monthly sales tax records and returns, cash receipts and disbursements, journals and ledger in accordance with generally accepted accounting principles[.]" [68-1] at 17; [68-2] at 17. Plaintiff had "the right at all reasonable times to review, audit, examine and copy" B & MP's books and records. *Id*.

If B & MP was delinquent on its franchise payments or if an audit revealed that its payments were understated in any reports to Plaintiff, then B & MP was required to "immediately pay to [Noble Roman's] the amount overdue or understated upon demand with interest determined in accordance with the provisions of Section IV.B.(3)." [68-1] at 17; [68-2] at 17. Unpaid obligations under the Franchise Agreements "b[ore] interest from the date due until paid at the lesser of the highest rate allowed by law or a rate that is five … percentage points per annum higher than the 'prime rate' then currently established by the largest bank (determined by total bank assets) headquartered in the state in which the [franchise] is situated." [68-1] at 5; [68-2] at 5. The Franchise Agreements also required B & MP to pay "all damages, costs, and expenses, including reasonable attorneys' fees, incurred by [Noble Roman's] in connection with obtaining any remedy available to [Noble Roman's] for any violation of" the Franchise Agreements. [68-1] at 26; [68-2] at 26.

On August 23, 2010, Army Trail Shell Deli Inc. ("Army Trail") was incorporated with the Illinois Secretary of State. See [197-5] at 266; [200] at 2-3. Bradley was registered as

President and Leslie as Secretary of Army Trail. See [197-5] at 266. Defendants maintain that Army Trail assumed B & MP's obligations as of January 1, 2011, and became B & MP's successor in interest, and took over all of its assets and liabilities. See [197-5] at 206; [200] at 3. Plaintiff characterizes Army Trail's role differently, and maintains that "[f]rom the beginning of the contractual relationship between the parties, Bradley and Leslie Perdriau have operated their business as B & MP doing business as Army Trail Shell Deli, Inc." [198] at 5-6.

On September 14, 2010, the Station opened and began operating its Noble Roman's and Tuscano's franchises.

On April 12, 2012, B & MP was involuntarily dissolved by the Illinois Secretary of State. See [197-5] at 267. Army Trail continued to operate the Station and the Noble Roman's and Tuscano's franchises.

In 2014, Plaintiff conducted an audit of the Station. Plaintiff discovered that the Station had not purchased Noble Roman's specified cheese since July 2012 or pepperoni since February 2013, yet was still making and selling pizzas that it held out to be Noble Roman's. According to Plaintiff, the non-conforming cheese and pepperoni sold by the Station would have had a different flavor profile. In its audit, Plaintiff also looked at B & MP's reported Gross Sales and compared them against B & MP's purchases of crusts and other key ingredients, made an allowance for reasonable waste products, and calculated an amount of sales that Plaintiff, based on its decades of experience in the pizza business, expected to see. Plaintiff determined that B & MP had systematically underreported its Gross Sales and, in turn, underpaid royalties to Plaintiff, which pursuant to the Franchise Agreements should have equaled 7 percent of the franchise's Gross Sales.[2]

---

[2] The facts set forth in this paragraph are based on the affidavit of Paul Mobley, Plaintiff's Executive Chairman and Chief Financial Officer. Defendants move to strike Mobley's affidavit on the basis that he

6

The Franchise Agreements provided that B & MP would operate its Noble Roman's and Tuscano's franchises continuously until the Term expired on September 19, 2020. See [68-1 at 3]; [68-2] at 3. However, the Station ceased its Noble Roman's and Tuscano's franchises on May 12, 2014 by de-branding and removing from the stores any references to the franchises. Plaintiff alleges that B & MP's failure to report Gross Sales or pay royalty fees since May 12, 2014 is a breach of the Franchise Agreements.

In its governing amended complaint [68], Plaintiff asserts four claims. In Count I, for breach of contract, Plaintiff alleges that B & MP breached the Franchise Agreements by selling under Plaintiff's marks pizza and subs that used nonconforming ingredients and by underreporting Gross Sales. In Count II, for violation of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A), Plaintiff alleges that B & MP's sale and distribution of unaffiliated pizza products and sub sandwiches using Plaintiff's marks, without authorization or consent, was likely to cause confusion or mistake or to deceive customers as to the origin, sponsorship, or approval of B & MP's goods by Plaintiff. In Count III, for deception in violation of Indiana Code § 35-43-5-3(a)(3), Plaintiff alleges that B & MP misapplied entrusted property in a manner that it knew to be unlawful or to involve a substantial risk of loss or detriment to Plaintiff. Finally, in Count IV, Plaintiff seeks injunctive relief against Defendants to prevent them from violating Plaintiff's rights under trademark law, falsely designating the origin of their products, and violating the post-termination covenants of the Franchise Agreements.

## II. Summary Judgment Standard

---

does not have personal knowledge of the audit and did not visit the station. See [197-2] at 6-8. The Court will not strike Mobley's affidavit. Mobley testified at his deposition that the audits were prepared and conducted at his instruction, that he reviewed and analyzed the audits, and that he reviewed the distributor reports in which B & MP showed its Gross Sales. See [202] at 4 and exhibits cited therein. Mobley's "experience and familiarity" with the audit and B & MP's reports "adequately qualify him to testify as he did in his affidavit." *City of Chicago v. Reliable Truck Parts Co*., 822 F. Supp. 1288, 1296 (N.D. Ill. 1993).

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party's assertion that a fact cannot be or is genuinely disputed must be supported by the materials in the record, including but not limited to "depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, [and] interrogatory answers." Fed. R. Civ. P. 56(c)(1). A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The party seeking summary judgment has the burden of establishing the lack of any genuine issue of material fact. See *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The Court "must construe all facts and draw all reasonable inferences in the light most favorable to the nonmoving party." *Majors v. Gen. Elec. Co.*, 714 F.3d 527, 532 (7th Cir. 2013) (citation and internal quotation marks omitted). Where, as here, the parties have submitted cross-motions for summary judgment, the Court "take[s] the motions one at a time, construing all facts and drawing all reasonable inferences in favor of the non-moving party." *Black Earth Meat Mkt., LLC v. Vill. of Black Earth*, 834 F.3d 841, 847 (7th Cir. 2016).

To avoid summary judgment, the nonmoving party must go beyond the pleadings and "set forth specific facts showing that there is a genuine issue for trial." *Liberty Lobby*, 477 U.S. at 250. Summary judgment is proper if the nonmoving party "'fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" *Ellis v. CCA of Tennessee LLC,* 650 F.3d 640, 646 (7th Cir. 2011) (quoting *Celotex,* 477 U.S. at 322). The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus.*

*Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). In other words, the "mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]." *Liberty Lobby*, 477 U.S. at 252.

### III. Plaintiff's and Defendants' Cross-Motions for Partial Summary Judgment

Plaintiff seeks summary judgment on three issues concerning liability. Specifically, Plaintiff seeks rulings that: 1) Noble Roman's method of audit is permitted by the Franchise Agreements, IRS guide recommendations, and industry practice; 2) once the amount of underpayment is determined, it is due and payable immediately; and 3) B & MP breached the Franchise Agreements by terminating them early and ceasing to report sales and pay royalties past January 2014, entitling Plaintiff to "future Fees" and other amounts pursuant to the Franchise Agreements, in an amount to be determined at trial.

In their cross-motion for summary judgment, Defendants argue that they are entitled to summary judgment on all of Plaintiff's claims.

First, Defendants argue that they are entitled to summary judgment because there is substantial evidence that B & MP assigned the Franchise Agreements to Army Trail, and that this assignment was acceptable to Plaintiff. Curiously, Defendants do not argue that Plaintiff's failure to name Army Trail as a defendant defeats Plaintiff's claims; instead, Defendants argue that "Plaintiff has not attempted to pierce the corporate veil of B & MP," and "[e]ven if Plaintiff did attempt to pierce the corporate veil as to B & MP, . . . the evidence is clear that the only liable party would be Army Trail . . . and not Leslie Perdriau, individually." [193-2] at 11.

Second, Defendants argue that Leslie is entitled to summary judgment on Plaintiff's claims because Leslie did not have a contract with Defendants and did not have knowledge of the Franchise Agreements or alleged breaches.

Third, Defendants argue that they are entitled to summary judgment on Plaintiff's Lanham Act claim because Plaintiff has come forward with no evidence of actual customer confusion caused by B & MP using non-Noble Roman's cheese and pepperoni on products that B & MP sold to its customers as "Noble Roman's" or "Tuscano" products, and no evidence that B & MP's alleged non-conforming products entered interstate commerce.

Fourth, Defendants argue that they are entitled to summary judgment on Plaintiff's deception claim, which is based on Indiana Code § 35-43-5-3, because "Illinois law governs the franchise agreements and any actions arising therefrom, thereby making a claim based on Indiana law inapplicable." [193-2] at 19.

Finally, Defendants argue that they are entitled to summary judgment on Plaintiff's claim for injunctive relief because Plaintiff cannot show that it is suffering or will suffer any substantial or immediate irreparable injury, as there is "no evidence to show that any of the named Defendants continue to sell alleged non-conforming goods or are even currently operating the Station." [193-2] at 20.[3]

The Court now turns to several preliminary questions raised by Defendants' motion for summary judgment, which the Court must consider before it can address Plaintiffs' motion.

---

[33] In their opening summary judgment brief, Defendants also asserted that Plaintiff's claims must fail because Plaintiff failed to comply with a provision of the Illinois Franchise Disclosure Act that requires a franchisor to provide certain disclosures to a prospective franchisee prior to entering into a franchise agreement. However, in their reply brief, Defendants withdrew their assertion that B & MP did not receive a franchise disclosure document when presented with Plaintiff's proof to the contrary. [203-1] at 1-2.

### A. Which Law Applies to Plaintiff's State-Law Claims?

Defendants argue that Illinois law governs their dispute, while Plaintiff maintains that Indiana law is controlling. Both parties offer cursory arguments that are based on language contained in the Franchise Agreements and a 2010 addendum thereto.

To resolve this issue, the Court first must determine which state's choice of law rules are applicable. Although a district court "normally applies the choice-of-law rules of the state in which it sits, when a case has been transferred from another district, the court instead applies the choice-of-law rules that the court in the transferring state would apply." *Cromeens, Holloman, Sibert, Inc. v. AB Volvo*, 349 F.3d 376, 383 (7th Cir. 2003). This case was transferred from the Southern District of Indiana pursuant to 28 U.S.C. § 1404(a); therefore Indiana choice of law rules apply to Plaintiffs' state law claims. See [148] at 3; see also *Nautilus Ins. Co. v. Reuter*, 537 F.3d 733, 734 (7th Cir. 2008) ("as a federal court sitting in Indiana, the district court applied Indiana choice-of-law rules").[4] "Indiana choice-of-law provisions generally favor contractual stipulations as to governing law." *Kapoor v. Dybwad*, 49 N.E.3d 108, 126 (Ind. Ct. App. 2015) (quotation marks and citation omitted). But "where the parties have not made an effective choice of law," the Court will apply "the law of the forum with the most intimate contacts to the facts." *Am. Employers Ins. Co. v. Coachmen Indus., Inc.*, 838 N.E.2d 1172, 1178 (Ind. Ct. App. 2005).

The Franchise Agreements at issue in this case provide in relevant part that "with respect to all claims, controversies, disputes or actions, this agreement shall be interpreted and construed under Indiana law." [198] at 4. This choice of law provision is enforceable. See *Kapoor*, 49 N.E. 3d at 126. Therefore, the Court will apply Indiana law to the entire breach of contract claim, even to the extent that the claim raises issues that do not require the interpretation and

---

[4] Plaintiff's two federal claims, for violation of the Lanham Act and for injunctive relief, are, of course, created by and interpreted according to federal law.

construction of the Franchise Agreements. This is because "[a]lthough Indiana allows different claims to be analyzed separately, it does not allow issues within those counts to be analyzed separately." *Rexroad v. Greenwood Motor Lines, Inc.*, 36 N.E.3d 1181, 1184 (Ind. Ct. App. 2015). "For example, an Indiana court might analyze a contract claim and a tort claim independently but would not separately analyze and apply the law of different jurisdictions to issues within each claim." *Id.*

Defendants argue that the Franchise Agreements' choice of law provision is not controlling because an "Addendum to the Franchise Offering Circular and Franchise Agreement," which was signed in 2010, provides that "nothing in the . . . Franchise Agreement can abrogate or reduce any of a franchisee's rights as provided for under Illinois law, or the franchisee's rights to any procedure, forum, or remedies provided for by the laws or the jurisdiction." [197-2] at 8. Defendants assert that this addendum is "clear on . . . its face that the parties intended Illinois law to govern the franchise agreements." *Id.* The Court disagrees. The above-quoted section of the Addendum does not contain any language evincing the intent that Illinois law govern all claims arising out of the Franchise Agreements. Instead, it preserves additional rights and remedies that an Illinois franchisee may have under Illinois law. Having abandoned their argument that Plaintiff failed to provide B & MP with disclosures required by the Illinois Franchise Disclosure Act, see *supra* note 3, this provision has no relevance to B & MP's arguments as to why it is entitled to summary judgment and the Court need not consider it further.

The Court now turns to Plaintiffs' claim for deception in violation of Indiana Code § 35-43-5-3. Defendants argue that they are entitled to summary judgment on this claim because "Illinois law governs the franchise agreements and any actions arising therefrom, thereby making

a claim based on Indiana law inapplicable." [193-2] at 19. The Court finds the argument that the Franchise Agreements require the Court to apply Illinois law unconvincing, for the reasons explained above. Nonetheless, the Court has serious doubts about Plaintiff's ability to bring a deception claim against B & MP. Deception is a criminal offense under chapter 35-43 of the Indiana Code. If a person "suffers a pecuniary loss as a result of violation of" that chapter, "the person may bring a civil action against the person who caused the loss." Ind. Code § 34-24-3-1.[5] While "[i]t is well established 'that Indiana law applies to a claim under an Indiana statute,'" the question here "is whether the Indiana statute applies to the facts alleged in the complaint." *Storie v. Randy's Auto Sales, LLC*, 589 F.3d 873, 879 (7th Cir. 2009) (quoting *Allen v. Great Am. Reserve Ins. Co.,* 766 N.E.2d 1157, 1166 (Ind. 2002)). The parties do not address this issue in their briefs. Although Plaintiff is an Indiana corporation with its principal place of business in Indiana, Plaintiff's franchisee and the franchise at the center of this lawsuit are both located in Illinois. Further, Defendants' alleged breach of the Franchise Agreement and violation of Plaintiff's rights under the Lanham Act appear to have occurred in Illinois. Therefore, it is unclear what legal basis Plaintiff has for bringing the deception claim against B & MP. In the supplemental briefing contemplated below, the Court will direct the parties to also address whether Indiana Code §§ 34-24-3-1 and 35-43-5-3 apply under the specific facts of this case.

**B.    Is Army Trail A Necessary Party?**

Although the parties largely gloss over the issue, the Court also finds it necessary to address as a threshold matter whether the proper corporate entity has been named as a defendant. Pursuant to Federal Rule of Civil Procedure 19, "[a] person who is subject to service of process

---

[5] "A criminal conviction . . . is not necessary to maintain an action" under Indiana Code § 34-24-3-1; "rather, the plaintiff need only prove a violation of the relevant criminal prohibition by a preponderance of evidence in order to pursue civil penalties against the defendant under the act." *Leapers, Inc. v. Trarms, Inc.*, 203 F. Supp. 3d 969, 973 (S.D. Ind. 2016).

and whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party if: (A) in that person's absence, the court cannot accord complete relief among existing parties; or (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may: (i) as a practical matter impair or impede the person's ability to protect the interest; or (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest."

In this case, both sides acknowledge that Army Trail faces liability under the Franchise Agreement, but for different reasons. B & MP maintains that Army Trail assumed all of B & MP's rights and obligations in 2011 and therefore is the only entity that "can be liable for B & MP, LLC's debts and obligations." [193-2] at 10. Plaintiff maintains instead that Army Trail is simply the "d/b/a" that B & MP has been using since the parties began their contractual relationship. Despite this, Plaintiffs do not name Army Trail as a defendant, or even identify B & MP as "B & MP d/b/a Army Trail" in the governing complaint.

Based on the briefing and evidence provided by the parties, the Court has serious doubts about its authority to enter judgment for or against Plaintiff on any of its substantive claims without Army Trail being added to the lawsuit as a Defendant. According to Defendants' briefs and supporting exhibits, B & MP was dissolved and Army Trail had taken over operation of Plaintiff's franchises at the Station by the time that the alleged breaches of the Franchise Agreements and violation of Plaintiff's trademark rights under the Lanham Act occurred. Defendants admit that Army Trail is responsible for B & MP's debts and obligations, which would include its obligations under the Franchise Agreements, trademark law, and the Indiana deception statute (to the extent that the statute is applicable). These facts and admissions

15

strongly suggest that any judgment in Plaintiff's favor should be entered against Army Trail, not B & MP.

Plaintiff apparently seeks to ignore any distinction between B & MP and Army Trail by characterizing Army Trail as the mere "d/b/a" of B & MP. However, Plaintiff does not cite any case law indicating when one company should be considered another's "d/b/a" or what effect such a status would have on the Court's ability to enter judgment against a corporate entity that has not been named as a defendant in the lawsuit. Further, the evidence submitted by the parties shows that Army Trail is a separate corporate entity, which was registered with the Illinois Secretary of State many years after B & MP, and that Army Trail kept operating after B & MP was involuntarily dissolved.

The Court recognizes that this may be an appropriate case to pierce the corporate veil between B & MP and Army Trail. See, e.g., *Konrad Motor & Welder Serv., Inc. v. Magnetech Indus. Servs., Inc*., 973 N.E.2d 1158, 1165 (Ind. Ct. App. 2012) (explaining that "[t]he corporate alter ego doctrine is a device by which a plaintiff tries to show that two corporations are so closely connected that the plaintiff should be able to sue one for the actions of the other" and identifying the factors considered in applying the doctrine). Alternatively, it may be the case that B & MP assigned all of its rights under the Franchise Agreements to Army Trail and/or that Army Trail is B & MP's successor in interest, such that Army Trail would be the proper corporate defendant to a suit arising out of a breach of the Franchise Agreements.

However, Plaintiff has not addressed the legal standard for piercing the corporate veil between two entities, or whether doing so would be appropriate under the specific facts of this case; nor has it addressed whether the Franchise Agreements were assigned to Army Trail or whether Army Trail is B & MP's successor in interest, such that Army Trail should be held liable

16

for breach of the Franchise Agreements and misuse of Plaintiff's marks. The Court will not analyze these issues without Plaintiff's or Army Trail's input, especially as Plaintiff chose not to name Army Trail as a defendant and Army Trail may have its own interests that are not adequately protected by the named Defendants and their counsel. Similarly, the Court believes it would be inappropriate to enter judgment for or against B & MP or Leslie on any of the issues raised in the parties' summary judgment motions without resolving the threshold issue of whether Army Trail is a necessary party. Therefore, the Court denies Plaintiff's and Defendants' motions for summary judgment without prejudice. Plaintiff will be given until May 5, 2017 to either file a motion for leave to amend the complaint to add or substitute Army Trail as a defendant, or file a brief—with citation to applicable legal precedent—advising the Court why Army Trail is not a necessary party to this lawsuit. The Court will then set a status hearing, order supplemental briefing, and/or reconsider its decision on summary judgment to the extent necessary.

## IV.     B & MP and Leslie Perdriau's Motion for Limited Discovery

Defendants seek to reopen discovery to explore the terms of B & MP's settlement with Bradley and the substance of those parties' settlement negotiations. Defendants argue that they are entitled to such discovery because the amount that Bradley paid would offset any amount that Defendants would be required to pay if Plaintiff obtains a judgment against them. Defendants also argue that the settlement terms and negotiations are relevant and discoverable because they may contain admissions that obviate triable issues; they may be used for impeachment at trial; and they may be used to show Plaintiff's or Bradley's bias or prejudice. Defendants explain further that they could not have obtained this information while discovery was still open, because B & MP settled with Bradley in the summer of 2016, after discovery had closed.

In response, Plaintiff agrees to provide Defendants with the settlement amount if and when Plaintiff obtains a judgment against them, so that the proper offset can be determined. However, Plaintiff maintains that the other settlement terms and negotiations are not relevant and therefore not discoverable because Federal Rule of Evidence 408 prohibits the settlement terms and negotiations from being used at trial.

The Court concludes that it is appropriate to reopen discovery for the limited purpose of allowing Defendants discovery on the terms and negotiation of the settlement between Plaintiff and Bradley Perdriau. Rule 408 provides that evidence of "furnishing, promising, or offering—or accepting, promising to accept, or offering to accept—a valuable consideration in compromising or attempting to compromise the claim" is not admissible on behalf of any party "either to prove or disprove the validity or amount of a disputed claim or to impeach by a prior inconsistent statement or a contradiction." Fed. R. Evid. 408(a). However, the Court "may admit this evidence for another purpose, such as proving a witness's bias or prejudice." Fed. R. Evid. 408(b). Thus, "Rule 408 does not create any category of documents that is off limits from discovery," but rather "creates a narrow exclusion from admissibility as evidence." *Clark v. Experian Info. Sols., Inc.*, 2006 WL 626820, at *2 (N.D. Ill. Jan. 6, 2006); see also *Pactiv Corp. v. Multisorb Techs., Inc.*, 2012 WL 1831517, at *5 (N.D. Ill. May 18, 2012) ("no discovery privilege exists regarding settlement negotiations").

The Court cannot say based on the information before it that the settlement and negotiations would be inadmissible for any purpose. For instance, at trial, Defendants would be entitled to cross-examine B & MP and Bradley on their potential biases. See Fed. R. Evid. 607 ("Any party … may attack the witness's credibility."); *United States v. Abel*, 469 U.S. 45, 52 (1984) ("Proof of bias is almost always relevant because the jury, as finder of fact and weigher of

credibility, has historically been entitled to assess all evidence which might bear on the accuracy and truth of a witness' testimony."). The settlement and negotiations may provide evidence of relevant biases, which Defendants should be allowed to explore through discovery. Therefore, the Court grants Defendants' motion to reopen discovery for the limited purpose of conducting discovery on the settlement and settlement negotiations between B & MP and Bradley Perdriau.

This ruling does not address whether Plaintiff is required to respond in full to Defendants' supplemental request for the production of documents [213-1]. If, in light of this ruling, Plaintiff has any remaining objections to the scope, breadth, or relevance of the supplemental requests, it should attempt to resolve these objections with Defendants using the cooperative process required by Rule 26(c). If that fails, Plaintiff is free to file a motion for protective order with this Court.

## V. Conclusion

For the reasons explained above, the Court denies Plaintiff's motion for partial summary judgment [184], denies Defendants' motion for summary judgment [193], and grants Defendants' motion to reopen discovery for the limited purpose outlined in the analysis below [213]. Plaintiff shall have until May 5, 2017 to either (1) file a motion for leave to file an amended complaint substituting or adding Army Trail Shell Deli, Inc. as the corporate defendant; or (2) file a brief, with proper citation to supporting authority, explaining why Army Trail is not a necessary party to this lawsuit. The Court will then set a status hearing, order supplemental briefing, and/or supplement or reconsider its summary judgment rulings if necessary. In addition, the parties should proceed with the supplemental discovery outlined above and are directed to file a joint status report on May 5, 2017 advising the Court of their progress and suggesting a cutoff date for completing the supplemental discovery.

Dated: March 29, 2017

_____
Robert M. Dow, Jr.
United States District Judge